**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

    **v.**                    **CRIMINAL NO. 1:22-CR-11-2
                               (KLEEH)**

**RICO CRAWFORD,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]

Pending before the Court is a motion to suppress filed by Defendant Rico Crawford ("Crawford"). For the reasons discussed herein, the Court **DENIES** the motion.

### I.   PROCEDURAL BACKGROUND

On February 15, 2022, the grand jury returned a 35-count indictment against 11 defendants, including Crawford. On March 27, 2022, Crawford filed the motion to suppress that is the subject of this Memorandum Opinion and Order. The Court referred the motion to the Magistrate Judge for a Report and Recommendation ("R&R"). On April 18, 2022, the Magistrate Judge held a hearing on the motion, and on April 25, 2022, he issued an R&R recommending that it be denied. Crawford filed objections to the R&R on May 4, 2022.

On May 3, 2022, the grand jury returned a 37-count superseding indictment against 11 defendants. Crawford was named in five

USA V. CRAWFORD                                                    1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

counts: Conspiracy to Distribute Controlled Substances (Count 1), Aiding and Abetting Distribution of Heroin (Count 8), Possession with Intent to Distribute Methamphetamine (Count 12), Possession with Intent to Distribute Fentanyl (Count 13), and Aiding and Abetting Possession with Intent to Distribute Heroin (Count 14).

## II.  <u>FACTS</u>

The Court bases the following facts on the parties' briefs and the testimony, arguments, and exhibits from the suppression hearing.  In March 2021, the Mon Metro Drug Task Force (the "Task Force") obtained search warrants to place a GPS monitoring device on a black Toyota 4Runner and to do GPS monitoring and a pen register trap and trace on a cell phone.  The 4Runner, which was a rental vehicle, and the cell phone were believed to be used by a drug trafficking organization to transport narcotics from Michigan to West Virginia.  The 4Runner had previously been observed being driven by Crawford from Detroit, Michigan, to Morgantown, West Virginia.  Undercover officers with the Task Force had previously contacted the cell phone to arrange and execute a controlled purchase.

The evening of April 6, 2021, Task Force Sergeant Ryan Gillespie ("Sergeant Gillespie") observed through GPS monitoring that the 4Runner and cell phone had moved around the Detroit area and embarked on a trip toward Morgantown.  Sergeant Gillespie

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

notified the Monongalia County Sheriff's Department (the "Sheriff's Department") that the vehicle was moving toward Morgantown. He provided information about the 4Runner and requested that deputies conduct a traffic stop on it if they could find probable cause to do so. Sergeant Gillespie also notified the Morgantown Police Department's canine handler, Zane Breakiron ("Officer Breakiron"), of the incoming 4Runner and advised that canine assistance may be needed.

Around 1:28 a.m. on April 7, 2021, Deputies Cornell King and John Matlick ("Deputy King" and "Deputy Matlick") of the Sheriff's Department parked their cruisers near the rest area on Interstate I-79 near mile marker 159. Neither Deputy King's nor Deputy Matlick's vehicle had video recording capability. Around 1:58 a.m., Deputy King saw the 4Runner pass him. He observed the 4Runner commit the traffic violation of following too closely behind another vehicle. Deputy King does not recall the 4Runner's speed or how close the two vehicles were in meters or yards. Deputy King pulled onto the interstate behind the 4Runner and further observed the 4Runner commit a traffic violation by driving on or over the right white line.

Deputy King turned on his emergency lights to initiate a traffic stop. Deputy Matlick followed behind to assist. The 4Runner pulled over, and the deputies exited their cruisers.

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

Deputy Matlick and Deputy King were both wearing body cameras and recorded their interactions with the 4Runner's two occupants.

Deputy King identified the driver of the vehicle as Crawford. Deputy Matlick identified the passenger as Addonis Moore ("Moore"). Deputy King advised Crawford, "[T]he reason I stopped you is you're following too close to that car and you were on the white line as I came up behind you." Moore had only a temporary paper ID, so Deputy Matlick attempted to retrieve secondary information to confirm his identity. Moore, however, did not have his wallet with him. Deputy Matlick smelled marijuana emitting from the vehicle when he spoke to Moore.

Crawford advised that they were traveling from Michigan to Morgantown to pick up a friend who lived in Morgantown. Crawford stated that they were picking up his nephew. Moore stated that they were picking up his cousin, but Moore then said that he and his cousin were not related — Moore just calls him his cousin. Deputy King returned to his cruiser to run Crawford's information through dispatch. Dispatch advised that Crawford's license had been "canceled." Deputy King returned to speak to Crawford about the status of his license. Deputy Matlick informed Deputy King that he had smelled marijuana and advised that Moore was breathing hard and seemed nervous. Deputy King personally observed Moore's nervous behavior, which included his chest moving up and down from

USA V. CRAWFORD                                          1:22-CR-11-2

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]

rapid breathing.

Based upon the smell of marijuana, the nervousness of Moore, and the inconsistencies in Crawford's and Moore's stories, the deputies called for a canine to conduct a free air sniff around the 4Runner.  Because Crawford's license was "canceled," the deputies did not know whether he was allowed to drive.  The deputies inquired as to when the canine would arrive, and they were told that the canine was nearby at mile marker 155.  Sergeant Alexander of the Sheriff's Department arrived shortly thereafter. Deputy King told Crawford and Deputy Matlick that he was going to figure out why Crawford's license was canceled.

Officer Breakiron and his canine, Rusty, arrived at 2:13 a.m. Deputy Matlick told Moore and Crawford,

> Since there is a slight odor of marijuana, your stories aren't really kinda acting up, I mean, making sense, we do have a canine here, he's gonna search the vehicle.  Okay, we're gonna pull you guys out one at a time, we're gonna just do a quick patdown to make sure there's no weapons.  Before we get to that point, is there any weapons on you?  'Cause I'm gonna take you out first.  Okay.  And then you'll be taken out second, okay?  Then the canine is gonna go around and then we'll go from there.  And if that's all it was, was a little bit o' weed earlier today and we can't find anything, we'll just give you guys a warning and send you down the road.  Okay?

Matlick Body Camera, 16:29-17:00.  Crawford and Moore were asked to step out of the vehicle, placed into handcuffs, and instructed

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

to move away from the 4Runner.  Officer Breakiron and Rusty walked around the perimeter of the 4Runner and performed a free air sniff.[1] Rusty crawled under the vehicle, and her breathing and sniffing changed; she laid down, with her head pointed up.  This was a positive indication for the presence of narcotics.

The deputies read Crawford and Moore their <u>Miranda</u> rights. Both stated that they understood their rights.  Deputy King advised them that the canine had alerted on the vehicle and that deputies would be searching the vehicle.  Both Moore and Crawford stated that there was nothing illegal in the vehicle.  Crawford advised that the only thing that might cause a positive indication was marijuana.  Rusty does not alert to the odor of marijuana.[2]

A search of the vehicle yielded two vacuum-sealed clear plastic bags of a crystal rock-like substance and a sealed bag containing a white powdery substance.  The bags were located in the air filter container of the vehicle.  The Government asserts that the bags contained heroin, fentanyl, and methamphetamine, which form the basis of the charges against Crawford in this case.

---

[1] Rusty is a female English pointer.  She is certified and gets recertified every year.  Officer Breakiron and Rusty do routine training every other week. Rusty is specifically trained to detect narcotic substances.  She alerts after smelling narcotics by lying down, sitting, or pointing.

[2] Officer Breakiron testified to this: "My dog does not alert to the odor of marijuana, so that would have no effect into my dog's alert."  FTR Recording, 12:27:43-12:27:52.  While Crawford argues that the canine could have alerted to marijuana, the Court finds Officer Breakiron's testimony more compelling due to his familiarity with the canine.

USA V. CRAWFORD                                              1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

Law enforcement did not issue a citation to Crawford or Moore for the traffic violations.

### III. THE PARTIES' ARGUMENTS

Crawford argues in his motion that law enforcement lacked reasonable suspicion to conduct the traffic stop because Deputy King failed to include sufficient detail in his statement. He also argues that the deputies unlawfully and unnecessarily extended the stop in order to conduct a search that exceeded its lawful scope. He argues that the probable cause created when Deputy Matlick smelled marijuana only permitted officers to search for marijuana that was smoked and left an odor — thus, he argues, it was unlawful to search under the hood of the vehicle. The Government argues that the 4Runner's traffic violations created reasonable suspicion for the stop, and both the smell of marijuana and the canine alert created probable cause to search the entire vehicle.

In his reply, Crawford argues that his alleged traffic violations have not been described with sufficient particularity under United States v. Sowards. At the suppression hearing, counsel for the Government also argued that law enforcement's information about the 4Runner's involvement in a drug trafficking organization supported reasonable suspicion for the stop.

USA V. CRAWFORD                                    1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

## IV.   REPORT AND RECOMMENDATION

In the R&R, the Magistrate Judge recommends that the Court deny the motion to suppress.  The Magistrate Judge found that the initial traffic stop was lawful because law enforcement observed Crawford commit two traffic violations.  The Magistrate Judge also found that law enforcement had probable cause to search the vehicle.  The probable cause was established by both the smell of marijuana and the canine's positive alert.  The Magistrate Judge found that the delay created while waiting for the canine to arrive was reasonable and created minimal intrusion, and law enforcement was entitled to search every compartment of the vehicle.

## V.   OBJECTIONS

Crawford objects to the following findings in the R&R:

- That "Breakiron further testified that Rusty does not alert to the odor of marijuana and the odor of marijuana would not influence Rusty's alert to the presence of narcotics" (page 13 of R&R)[3];

- That because the officers had probable cause, they could lawfully search every compartment of the vehicle, including under the vehicle's hood (page 24 of R&R);

- That law enforcement obtained probable cause to search the vehicle, and extending the

---

[3] Crawford questions whether this is an accurate statement of Breakiron's testimony.  The Court has reviewed the audio recording of the suppression hearing and **OVERRULES** this objection.  Deputy Breakiron says, "My dog does not alert to the odor of marijuana, so that would have no effect into my dog's alert."  FTR, 12:27:43-12:27:52.

USA V. CRAWFORD                                                    1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

> traffic stop to await a drug dog's arrival was reasonable and created minimal intrusion (page 22 of R&R); and

- That the traffic stop was legitimate from the outset and lawful based upon observed traffic violations (page 19 of R&R).

Due to the extensive nature of Crawford's objections, the Court will review the entire R&R de novo.

## VI.  DISCUSSION

For the reasons discussed herein, the Court finds that the initiation of the traffic stop was lawful.  The Court also finds that when Officer Matlick smelled marijuana, law enforcement had probable cause to search the entire vehicle.  The waiting period for the canine to arrive was reasonable, and the positive alert by the canine further created probable cause to search the entire vehicle.  The air filter container was within the scope of that search.

### A.  The initial traffic stop was lawful because Deputy King witnessed Crawford commit two traffic violations.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated."  U.S. Const. amend. IV.  It is well-established that "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances."  United

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citation
omitted).  A seizure, such as a traffic stop, must be supported by
"a 'reasonable suspicion,' based on articulable, particularized
facts, that 'criminal activity may be afoot.'"  United States v.
McCoy, 513 F.3d 405, 410-11 (4th Cir. 2008) (citing Terry v. Ohio,
392 U.S. 1, 30 (1968)).

Reasonable suspicion "defies precise definition."  Id. at
411.  In determining whether reasonable suspicion exists, courts
"look to the totality of the circumstances."  Id.  The Supreme
Court of the United States has "counseled lower courts to give
'due weight' to the factual inferences drawn by police officers as
they investigate crime."  Id. (citing United States v. Arvizu, 534
U.S. 266, 273 (2002)).  An officer "must have a particularized and
objective basis for suspecting the particular person stopped of
criminal activity."  United States v. Cortez, 449 U.S. 411, 417-
18 (1981).

It is well-established that a law enforcement officer is
permitted to stop a vehicle when the officer observes a vehicle
violating a traffic law.  See United States v. Ortiz, 669 F.3d
439, 444 (4th Cir. 2012); see also United States v. Palmer, 820
F.3d 640, 649 (4th Cir. 2016) (stating that a traffic stop is
reasonable at the outset "whenever it is lawful for police to
detain an automobile and its occupants pending inquiry into a

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

vehicular violation" and that "such a violation may include failure to comply with traffic laws") (internal citation and quotation omitted).

In his objections, Crawford argues that Deputy King failed to support his decision to make a traffic stop with statements and information sufficient to meet a minimum indicia of reliability with respect to his observation that Crawford's vehicle was "following too closely." He argues that the Magistrate Judge misapplied the rule of law set forth in United States v. Sowards, 690 F.3d 583 (4th Cir. 2012). He also argues that the alleged touching of the right-side fog line is not a violation of W. Va. Code 17C-3-4 as alleged by Deputy King.

Crawford's reliance on Sowards is misplaced. In Sowards, the Fourth Circuit assessed the reliability of a police officer's visual estimation of a moving vehicle's speed. Id. at 585. The police officer estimated that Sowards was traveling 75 miles per hour in a 70 mile-per-hour zone. Id. The officer did not attempt to verify or corroborate (with radar or otherwise) his visual speed estimate. Id. The court found that if a vehicle's estimated speed is "slight[ly]" in excess of the legal speed limit (as it was in Sowards), "then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate." Id. at 591.

USA V. CRAWFORD                                              1:22-CR-11-2

MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]

Here, Crawford was not pulled over for speeding.  He was pulled over for (1) following another vehicle too closely, and (2) crossing the white line.  With respect to following another vehicle too closely, under section 17C-7-10(a) of the West Virginia Code, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."  Deputy King testified that he observed the 4Runner following another vehicle too closely, such that if the vehicle in front of the 4Runner would have rapidly stopped, the 4Runner would have had difficulty stopping without hitting the vehicle in front.  This testimony is factually undisputed; Crawford merely challenges the indicia of reliability with respect to Deputy King's observation.  The Court finds that Sowards does not extend to the traffic violation of following too closely.  Law enforcement did not need to make a visual estimation of the 4Runner's speed before ascertaining that it had violated section 17C-7-10(a).  No additional indicia of reliability were necessary for Deputy King's observation to create reasonable suspicion.

Even if the offense of following too closely did require additional indicia of reliability, Deputy King's observation of the 4Runner crossing the white line was sufficient justification to stop the vehicle.  Under section 17C-7-9(a)(1) of the West

12

USA V. CRAWFORD                                                1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

Virginia Code, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  Veering out of one's lane is a violation of section 17C-7-9(a)(1).  See United States v. Gaston, No. 1:19-CR-55, 2019 WL 12023243, at *6 (N.D.W. Va. Nov. 19, 2019) ("The undersigned finds that Mr. Taylor's vehicle veered out of his lane twice and crossed into the right lane in violation of West Virginia Code Section 17C-7-9(a)(1)."), report and recommendation adopted, No. 1:19-CR-55, 2021 WL 1254678 (N.D.W. Va. Apr. 5, 2021) (Kleeh, J.); United States v. Nelson, No. 3:16-00092-08, 2016 WL 6808187, at *2 (S.D.W. Va. Nov. 16, 2016) (Chambers, J.) (citing W. Va. Code § 17C-7-9 and stating that "Trooper Williams had reasonable suspicion that Nelson had committed a traffic violation for . . . crossing the fog line onto the shoulder of the road"); United States v. White, No. 2:13-CR-00224, 2014 WL 4629385, at *4 (S.D.W. Va. Sept. 15, 2014) (Johnston, J.) (reasonable suspicion existed that a driver had violated W. Va. Code § 17C-7-9 when the officer observed her swerve off the road).

Deputy King's testimony that he saw Crawford cross the white line is factually undisputed.  Again, Crawford challenges only the indicia of reliability.  Deputy King witnessed Crawford violate

USA V. CRAWFORD                                          1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

section 17C-7-9(a)(1) when he saw Crawford cross the white line.[4] The observation required no estimation on Deputy King's part, and <u>Sowards</u> does not apply. Deputy King had reasonable suspicion to conduct a traffic stop on the 4Runner.

> **B.  As soon as law enforcement smelled marijuana emitting from the vehicle, they had probable cause to search the entire vehicle.**

It is well-established that the smell of marijuana emitting from a vehicle creates probable cause to search the vehicle. <u>See United States v. Lewis</u>, 606 F.3d 193, 198 (4th Cir. 2010). Where probable cause exists to search the vehicle based on the smell of marijuana, the Fourth Amendment permits a warrantless search of "any containers or compartments found within it." <u>United States v. Lesane</u>, 361 F. App'x 537, 539 (4th Cir. 2010). Deputy Matlick testified that he smelled marijuana from the passenger side of the vehicle, and this testimony is undisputed. Officers were, therefore, permitted to search any container or compartment in the 4Runner, including the air filter container. The scope of the search was lawful.

---

[4] Deputy King and the Magistrate Judge believe that Crawford violated section 17C-3-4(a) of the West Virginia Code, which provides, "The driver of any vehicle . . . shall obey the instructions of any traffic-control device applicable thereto placed in accordance with the provision of this chapter[] . . . ." A traffic-control device includes "all signs, signals, markings, and devices . . . placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." <u>Id.</u> § 17C-1-47. The Court also finds that Crawford's crossing the white line violated section 17C-3-4(a) of the West Virginia Code.

USA V. CRAWFORD                                        1:22-CR-11-2

MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]

   C.   **The extension of the stop until the canine arrived was
        reasonable, and the canine's positive alert also created
        probable cause to search the vehicle.**

A drug dog's sniff of a vehicle does not require a warrant
because it is not a "search" for purposes of the Fourth Amendment.
Illinois v. Caballes, 543 U.S. 405, 409 (2005).  When a trained
dog "alerts" to the presence of narcotics, this constitutes
probable cause to search the vehicle.  Id. at 409–10.

Law enforcement may detain a vehicle and its occupants while
awaiting a drug dog's arrival and sniff, but the detention must be
reasonable, with officers using "diligence in pursuing their
investigation" and minimizing intrusion upon the suspect.  United
States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012) (55-minute
detention of vehicle in parking lot while awaiting arrival of drug
dog was not unreasonable as officers were diligent in their active
investigation).

Here, approximately ten minutes elapsed between the
initiation of the traffic stop and the arrival of the drug dog.
While deputies awaited the drug dog's arrival, they were also
awaiting details regarding the cancelation of Crawford's driver's
license.  The delay here was reasonable and justified, and officers
were diligent in their active investigation.  When the canine
positively alerted, officers had probable cause to search the
entire vehicle, including the air filter container.

15

USA V. CRAWFORD                                              1:22-CR-11-2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 162] AND DENYING MOTION TO SUPPRESS [ECF NO. 130]**

### VII. CONCLUSION

For the reasons discussed above, the R&R is **ADOPTED** [ECF No. 162] to the extent consistent with this Memorandum Opinion and Order, Crawford's objections are **OVERRULED** [ECF No. 170], and Crawford's motion to suppress is **DENIED** [ECF No. 130].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record, the Office of Probation, and the United States Marshals Service.

DATED: April 24, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA